**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Civil Action Number**:

RAQUEL SAAVEDRA,

      Plaintiff,

v.

VILLA SAN SOUCI, LLC and
SHARON FLEISHMAN

         Defendants.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Raquel Saavedra ("Plaintiff"), by and through her undersigned counsel, hereby sues Defendant Villa San Souci, LLC and Defendant Sharon Fleishman for injunctive relief and damages pursuant to 42 U.S.C. §3601, *et seq.*, of the Fair Housing Act ("FHA") § 800 *et seq.* and 24 C.F.R. Part 100 and alleges:

**JURISDICTION**

1.    This Court has original jurisdiction over the action pursuant to the Fair Housing Act Section 800 *et seq.* as delineated within 42 U.S.C. §3601, *et seq.*

2.    This is also an action for declaratory and injunctive relief and damages pursuant to 28 C.F.R. Part 100.

3.    This Court is vested with original jurisdiction under 28 U.S.C. §1331.

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) in that all events giving rise to this lawsuit occurred in the State of Florida, Southern District of Florida, Miami division.

1

## PARTIES

5.      Plaintiff Raquel Saavedra ("Plaintiff") has a qualified disability and requires the accompaniment of her emotional support animals, particularly within her home, Exhibit A.

6.      Plaintiff's disability is defined in 42 US Code §12102(1)(A) and in 42 U.S.C. §3602(h).  Plaintiff's medical conditions limit her major life activities which meet requirements of 42 US Code §12102(2)(B).

7.      At all times material hereto, Plaintiff has been a resident of Miami Dade county who was (and is) a renter as defined at FHA §802; 42 U.S.C. §3602(d) and (e).

8.      Defendant Villa San Souci, LLC ("Defendant San Souci LLC") is, and was at all times material hereto, a limited liability company organized and existing under the laws of the State of Florida and is within the jurisdiction of this Court. Defendant San Souci LLC maintains its principal business at 11610 N Bayshore Drive, North Miami, Florida 33181 because it owns over twenty of the twenty-four condominium units at the Villa San Souci complex which units it rents to third parties.

9.      At all times material hereto, Defendant Sharon Fleishman ("Defendant Fleishman") has been the operating manager of all of the condominium units which Defendant San Souci LLC owns and leases/rents to the general public. Defendant Fleishman is the principal party that shows condominium units to prospective renters, approves prospective renters as tenants, executes lease/rental contracts with

2

renters, and manages the daily maintenance matters associated with the condominium units owned by Defendant San Souci LLC.

## **FACTUAL ALLEGATIONS**

10.     Plaintiff was (and is) at all times material hereto, the lessee of real property with property address of 11610 N Bayshore Drive, Apartment. 1E, North Miami, Florida 33181 (Apartment. 1E).  Apartment 1E is located within the "Villa San Souci" condominium complex which is within the jurisdiction of this court. Plaintiff, as a renter, is defined at FHA §802; 42 U.S.C. §3602(d) and (e).  Villa San Souci is a dwelling as defined at FHA §802; 42 U.S.C. §3602(b).

11.     Plaintiff lives with her two emotional support animals, Bourbon and Brandy.  Both emotional support animals are licensed and registered as such.

12.     On September 1, 2020 Plaintiff moved into Apartment 1E pursuant to a lease agreement with then-owner Keith Freiman ("Freiman"). Prior to moving into Apartment 1E, Plaintiff provided then-owner Freiman with letter from her health care provider stating that Plaintiff required her emotional support animals to be with her at all times.  Then-owner Freiman rented Apartment 1E to Plaintiff under a 12-month lease which include a provision for Plaintiff's emotional support animals as being medically necessary, see **Exhibit A**.

13.     Based upon then-owner Freiman's agreement to accommodate the Plaintiff, the Plaintiff executed the lease of Apartment 1E and moved into the unit on September 1, 2020.

14.     On September 26, 2020, Plaintiff had allowed her emotional support animals into her fenced back yard when the Roberto Giordano (the tenant in Apartment 1D, who is renting 1D from Defendants) became irate, began to scream obscenities, broke pieces off the shared fence (between the two unit's backyards)

and commenced to throw those fence pieces at Plaintiff and her emotional support animals.  Plaintiff became very fearful and took her dogs inside and called the police.  Police responded and wrote up a report of the incident, **Exhibit B**.

15.     Plaintiff called Defendant Fleishman and told her of the incident, Defendant admitted to Plaintiff that she corroborated the unwarranted aggression against Plaintiff and her emotional support animals with neighbors who witnessed the aggression. Plaintiff told Defendant Fleishman that the police officer advised that the landlord was the appropriate party to file charge for property destruction against Roberto Giordano. Defendant Fleishman had the fence fixed, but did not file charges against Roberto Giordano for the damage.

16.     From September 26, 2020 until the present time, Plaintiff has notified Defendant Fleishman as to many instances of Roberto Giordano's aggression

including smoking out her house with his illegal barbeque and his continued tirades against her two emotional support animals as well as his aggressive behavior to neighborhood cats and other tenants in the building. Defendant Fleishman has responded to each notification of Roberto Giordano's aggression by stating that

Roberto Giordano has complained that Plaintiff's emotional support animals bark

all day long. Defendant Fleishman as continued to defend Roberto Giordano despite receiving information from other tenants that they rarely or never hear Plaintiff's emotional support animals, and despite receiving reports from other tenants complaining of Roberto Giordano's aggression toward single women tenants and pets.

17.    In each and every instance, when Defendant Fleishman has been notified as to the bad acts of Roberto Giordano, Defendant Fleishman has done nothing to alleviate Plaintiff's concerns but continues to reference Plaintiff's emotional support animals as "barking dogs."

18.    Despite the aggressive and unruly Roberto Giordano in Apartment 1D, Plaintiff has let Defendant Fleishman know that she desires to continue to rent Apartment 1E and live there with her emotional support animals.

19.    Some months before Plaintiff's lease renewal, Defendant Fleishman negotiated the purchase of apartment 1E from the owner which leased the apartment to Plaintiff on behalf of Defendant San Souci LLC and by the time the lease was to renew, Defendant San Souci LLC became the new owner.

20.    On August 22, 2021, Freiman sent a letter to Defendant Fleishman advising her as to all the items which needed to be repaired or replaced in Apartment 1E, which includes (but is not limited to) microwave, dryer, washing machine, mold in the bathroom, and broken glass door leading to the patio.  See **Exhibit C**

21.     After initial walkthrough of Plaintiff's unit and many phone calls to Defendant Fleishman to arrange for entry for repair and replacement of broken items, Defendant Fleishman has failed and refused to repair or replace a single item in Apartment 1E. On Plaintiff's investigation of Defendants normal business practice of repair and replacement of broken items in the rental units, Plaintiff learned that Defendant San Souci LLC is pro-active and quick to repair broken items in the San Souci rental units. As of the date of this filing, Defendants have failed and refused to repair or replace any of the items on the list.  Defendants have refused to provide normal lawn maintenance, air conditioning filters and pest extermination for Plaintiff while providing the same to other tenants.

22.     Just prior to the 12-month lease expiration of Plaintiff's lease, then-owner Freiman informed Plaintiff that he negotiated with Defendant Fleishman and sold Apartment 1E to Defendant San Souci LLC, and told her that her rent may go up slightly but that she would be able to stay in the unit.  He also informed Plaintiff that he had forwarded the lease and Plaintiff's medical note regarding her emotional support animals as well as the emotional support animal's licenses as such to Defendants.

23.     Based upon then-owner Freiman's representations, Plaintiff timely paid the $1,300 September 2021 rent to Defendant San Souci LLC and did not receive any notice that the rent payment was deficient.

24.     In September, Plaintiff contacted Defendant Fleishman and told her she was looking to stay in the unit, and Defendant Fleishman stated that she could only stay if she paid rent of $1,550, however she failed to put the rent increase in writing.

25.     Plaintiff asked other tenants what they were paying in rent and learned that Defendant San Souci's other tenants were paying between $1,300 to $1,400 per month rent, and many tenants have not received any rent increase when their initial 1-year lease was renewed on a month-to-month basis.  Defendants' verbal notice of an increase in rent to $1,550 is outside of the range of rent which is charged and collected on average by Defendant San Souci LLC.

26.     Plaintiff asked Defendant Fleishman why she was charging $250 more for her unit when Defendants have rented the same size unit (Apartment 1A) for $1,300 per month.  Defendant Fleishman failed to respond to Plaintiff's query and did not give Plaintiff a written notice of an increase in rent to $1,550.  Because Plaintiff did not receive a written notice of rent, on October 1, 2021, Plaintiff remitted $1,300 USD to Defendant San Souci LLC for her October 2021 rent.  Plaintiff did not receive notice that the rent she paid was deficient.

27.     On Plaintiff's investigation of the other tenants, Plaintiff learned that Defendant San Souci LLC's normal business practice was to put any rent increase (if any) in writing and that Defendants' normal business practice was/is to continue

collecting rent without executing a new lease such that Defendant San Souci LLC's tenants are effectively on month-to-month leases.

28.     Instead of permitting Plaintiff to continue to tenancy as per Defendants normal business practice and despite having accepted Plaintiff's October 2021 rent payment (which guarantees Plaintiff occupancy through October 31st) on October 4, 2021, Defendants' maintenance man delivered Notice to Vacate to Plaintiff a hand-written 15-day demanding Plaintiff to vacate Apartment 1E by October 21, 2021, see Exhibit D.

29.     Defendants 15-day Notice to Vacate is violation of Miami-Dade County Ordinance 21-1 which states that "A residential tenancy without a specific duration in which the rent is payable on a monthly basis may be terminated by either the landlord or tenant by giving not less than 30 days written notice prior to the end of any monthly period. The requirements of this ordinance shall apply within incorporated and unincorporated areas of Miami-Dade County."

30.     Plaintiff called Defendant Fleishman to ask about the 15-day notice and Defendant Fleishman told Plaintiff that she expected her and her dogs were to vacate the premises and did not give any further explanation.

31.     On October 5, 2021, Defendants maintenance man informed Plaintiff that he was going to enter Apartment 1E and show the apartment to prospective tenants. Plaintiff (who is immune compromised) is frightened of strangers entering her apartment and, while initially agreeing to his intended entry, eventually told him

that she had paid rent through October and that she did not want him to enter into her apartment.

32.     On behalf of Plaintiff, on October 12, 2021, attorney Giorgio Ramirez sent an email to Defendant Fleishman informing her that Defendants' 15-day notice was in violation of Ordinance 21-1 and notifying Defendants that Plaintiff has not been able to find adequate accommodation for herself and her emotional support animals and could not vacate the unit, see Exhibit E.  Attorney Ramirez further asked Defendants to provide at least to December 31, 2021 for Plaintiff to find adequate replacement housing.

33.     On October 13, 2021 Defendants maintenance man delivered a hand-written 30-day notice to Plaintiff demanding Plaintiff to vacate the premises by November 30, 2021 under F.S. 83.03 (termination of tenancy at will), see Exhibit F.

34.     On information and belief, Defendants intent to terminate Plaintiff's tenancy is a continuation of Defendants failure and refusal to accommodate Plaintiff and her emotional support animals on the basis of Defendant Fleishman's questionable believing that the tenant in unit 1D (Roberto Giordano) is/was somehow justified in his hatred for Plaintiff's emotional support animals.

35.     Defendants failure and refusal to treat Plaintiff as a continuing tenant and to honor their normal business practice to continue leases as month-to-month for their continuing tenants and to accommodate Plaintiff and continue her lease with a small increase in monthly rent as with their other tenants is willful and malicious

discrimination with intent to remove a tenant for no other reason than their refusal to accommodate Plaintiff due to disability and her need for emotional support animals.

36.    The effect of Defendants failure and refusal to repair or replace broken items in the unit, failure and refusal to continue to rent to Plaintiff (as is Defendants' normal business practice with all of other tenants at San Souci Villas) and to provide that rent with a reasonable ($50 to $100) increase in rent, are malicious acts intended to remove Plaintiff and her emotional support animals from Apartment 1E.   By these actions, Defendants are refusing to abide by the FHA and the regulations promulgated thereto.

37.    By failing and refusing to offer continued tenancy to Plaintiff in 1E, Defendants have placed Plaintiff in an untenable position and retaliated against the Plaintiff's continued reporting on the bullying and aggressive behavior of Roberto Giordano, their tenant in unit 1D.

38.    Plaintiff is living in a fearful and stressful situation, and has had tremendous difficulty in finding adequate accommodation for her and her two emotional support animals, due to Defendants' threat of imminent eviction should she continue to stay at Apartment 1E.

39.    Plaintiff feels that Defendants may retaliate further when served with the instant Complaint, and seek to evict her as a retaliatory action.

40.     As a direct result of the Defendants' discrimination, Plaintiff has suffered

fearfulness, loss of dignity, mental anguish, and other tangible injuries.

41.     Defendants refusal to accommodate Plaintiff while renting similar (and

larger) condominium units within the San Souci Condominium complex at similar

rental rates and their failure and refusal to repair/replace items within Apartment

1E are violations of the FHA and 24 C.F.R. §100.204(a), which states that is

unlawful for any person to refuse to make reasonable accommodations in rules,

policies, practices, or emotional supports, when such accommodations may be

necessary to afford a handicapped person equal opportunity to use and enjoy a

dwelling unit.

42.     The effect of Defendants failure and refusal to continue Plaintiff's tenancy

in Apartment 1E as they have continued tenancies for tenants who do not require

emotional support animals in the 20+ condominium units they own/manage at Villa

San Souci has placed Plaintiff in an untenable position of having to locate a rental

dwelling despite Defendants' being required to abide by the FHA and the

regulations promulgated thereto.

43.     Defendants have retaliated against Plaintiff and her emotional support

animals by refusing to honor the continuation of Plaintiff's executed lease on

Apartment 1E as Defendants continue leases for other tenants at Villa San Souci

condominiums.

44.     Defendants have refused to permit Plaintiff to continue her tenancy in Apartment 1E, when they have not engaged in this similar practice with any other of their 20+ condominium units at Villa San Souci, therefore they are in violation of 24 CFR §100.60(a) which states that is unlawful to refuse to rent a dwelling to a person because of a handicap.

45.     Defendants have verbally requested Plaintiff pay a rent increase from $1,300/month to $1,550/month at a time when Defendants average monthly rental is between $1,300 to $1,400 per month. Defendant's attempt to significantly increase Plaintiff's rent is in violation of 24 CFR §100.60(b)(3) which prohibits the imposition of different rental charges for the rental of a dwelling to a person because of a handicap.

46.     Defendants have served plaintiff with an illegal 15-day notice to vacate followed by a 30-day notice to vacate, both of which they have not used on any other tenant whose year lease is expired. These notices to vacate amount to eviction proceedings and Defendant's attempt to evict Plaintiff is in violation of 24 CFR §100.60(b)(5) which states that evicting tenants because of their handicap is prohibited.

47.     Defendants failure to address the harassment of Plaintiff by Roberto Giordano, the tenant in Apartment 1D has resulted in Roberto Giordano becoming bolder in his harassment against Plaintiff and her emotional support animals. Defendants lack of action is tantamount to acceptance, and as such Defendants are,

and have been, subjecting Plaintiff to harassment because of her handicap (her need for emotional support animals), which is a violation of  24 CFR §100.60(b)(7).

48.     Defendants have restricted and discouraged Plaintiff from continued tenancy in Apartment 1E and as such Defendants are in violation of 24 CFR §100.70(a) which states that it is unlawful, because of handicap, to restrict and/or discourage an individual from renting a dwelling unit.

49.     With respect to the fact that Plaintiff is a renter of Apartment 1E who requires accommodation for her emotional support animals due to her disability and has been unreasonably served a 30-day notice, when no other continuing tenant has received such a notice, Defendants are in violation of 24 CFR §100.70(c)(1), which states that it is prohibited to discourage any person from renting a dwelling because of handicap.

50.     With consideration that the San Souci Villas are a condominium and Apartment 1E is a condominium unit, Defendants are in violation of 24 CFR §100.70(d)(3), which states that it is prohibited to refuse to approve a person for occupancy in a cooperative or condominium because of handicap.

51.     Enforcement of Plaintiff's rights is right and just pursuant to 42 U.S.C §3613 (a)(1)(A).

52.     Plaintiff has been obligated to retain the civil rights law office of J. Courtney Cunningham, PLLC and has agreed to pay a reasonable fee for emotional supports in the prosecution of this cause, including costs and expenses incurred. Plaintiff is

entitled to recover those attorney's fees, costs and expenses from Defendants

pursuant to 42 U.S.C. §12205.

### COUNT I – VIOLATIONS OF THE FAIR HOUSING ACT

53.     The Villa San Souci condominium complex containing Apartment 1E

which is the subject of this action is a dwelling identified by §802, 42 U.S.C.

§3602(b), and which must be in compliance with the FHA with respect to

handicapped persons (defined at §802 42 U.S.C. §3602 (h)).

54.     Under the FHA, renters of residential housing with disabilities may request

reasonable accommodation that enables them to use and enjoy their residential units

in the same way that non-disabled residents would. The owner of that dwelling must

make reasonable accommodation for a disabled resident, and failing to do so

constitutes unlawful discrimination. Reasonable accommodation includes (but is

not limited to) allowance of emotional support animals for individuals who have

shown the need for a emotional support animal (with a letter from a medical

provider) regarding the need for emotional support animals.

55.     Plaintiff has the need for two emotional support animals.  Defendants not

only knew of the Plaintiff's need for accommodation (via receipt of a letter from a

medical provider), but Defendants had copies of Plaintiff's emotional support

animal identifications. Thus, Defendants should have known of the ramifications

of not accommodating the disabled Plaintiff accordingly.

56.     As a member of the class of protected plaintiffs, Plaintiff requested

accommodation, which is reasonable and necessary.

57.     Reasonable accommodation was simply to continue to rent to Plaintiff as Defendants rent to other tenants at Villa San Souci Condominiums.

58.      Defendants have failed and refused to make accommodation for the Plaintiff.

*59.*     Defendants have discriminated, and continue to discriminate, against Plaintiff by denying full and equal access to her apartment by refusing and failing to accommodate handicapped residents pursuant to FHA § 800 *et seq.*; 42 U.S.C. §3601 et seq., where such accommodation is readily achievable.

60.     Pursuant to the FHA, Defendant San Souci LLC is required to make its the Villa San Souci rental units accessible to persons with disabilities.  By failing to treat Plaintiff (who requires accommodation) equally with its other tenants Defendant San Souci LLC and Defendant Fleishman have failed to comply with this mandate.

61.     Pursuant to §804, 42 U.S.C. §3604(f)(3)(B), this Court is vested with the authority to grant the Plaintiff's injunctive relief; including an order to require

Defendant San Souci LLC to rent Plaintiff Apartment 1E at the average rental price (per square foot) which it rents other units it owns in the Villa San Souci condominium and to continue that rental as it offers in its normal practice to other tenants in its Villa San Souci condominium.

WHEREFORE, the Plaintiff hereby demands judgment against Defendant  Villa San Souci, LLC and Defendant Sharon Fleishman and requests the following injunctive and declaratory relief:

A.     The Court declares that the Villa San Souci condominiums which are owned, operated, controlled and/or administered by Defendant Villa San Souci, LLC are violative of the FHA by its refusal to make reasonable accommodations in rules, policies, practices, or emotional supports, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling as per §804, 42 U.S.C. §3604(f)(3)(B);

B.     The Court enter an Order requiring Defendant to initiate a policy, rules, and regulations to accommodate individuals (potential owners, renters and current owners and renters) for any disability they may have, including acceptance of potential owners, renters and current owners and renters when they are accompanied by (and/or required to live with) emotional support animals and/or emotional support animals;

C.     The Court award reasonable attorney's fees, punitive damages, compensatory damages, all costs (including, but not limited to court costs and any expert fees), and other expenses of suit; and

D.     That the Court award such other and further relief as it deems necessary, just, and proper.

## COUNT II – RETALIATION

62.     The provisions within 28 CFR 100.400 protect individuals with disabilities from being threatened, intimidated, coerced, or interfere with any person in the exercise or enjoyment of rights guaranteed and/or protected by the FHA.

63.     Defendants have refused provide the similar type of lease renewal to Plaintiff which Defendants have in the normal court of their rental business provided to other tenants at their Villa San Souci condominium rental units, which would be to continue Plaintiff's tenancy/lease until that Plaintiff herself would choose to vacate the premises.

64.     Section 100.400(c)(1) states that it is unlawful to deny or limit the benefits provided in connection with the rental of a dwelling because of handicap.  The Defendant's refusal to provide renewal of tenancy for Plaintiff is denying the Plaintiff the benefit of security of a residential lease of the apartment where the Plaintiff and two emotional support animals have been residing.

65.     Section 100.400(c)(2) states that that it is unlawful to interfere with a person's enjoyment of a dwelling because of handicap. The Defendant's failure to provide renewal of tenancy has interfered with the Plaintiff's enjoyment of the dwelling in violation Section 100.400(c)(2).

66.     Section 100.400(c)(5) states that that it is unlawful to retaliate against any person because that person has made a complaint. Defendants' failure provide renewal of tenancy is directly retaliation against the Plaintiff due to the fact that she has two emotional support animals and based on the disagreements over her emotional support animals brought about by Roberto Giordano, tenant in unit 1D.

67.     Defendants have engaged in retaliatory actions directed at the Plaintiff by refusing to permit the continued tenancy of Plaintiff and her emotional support

animals in Apartment 1E, the apartment they have been occupying, and have occupied since September 1, 2020.

**WHEREFORE,** Plaintiff Raquel Saavedra hereby demands judgment against the Defendant Villa San Souci, LLC and Defendant Sharon Fleishman and the Court to enter an Order requiring Defendants to cease and desist retaliation, provide a residential lease for the premises occupied by Plaintiff and award reasonable attorney's fees, compensatory and punitive damages for said retaliation and to award such other and further relief as it deems necessary, just and proper.

Dated this 4th day of November 2021.

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
Telephone:  305-351-2014
Email: cc@cunninghampllc.com
*Counsel for Plaintiff*